464 So.2d 1173 (1985)
Mario LARA, Appellant,
v.
STATE of Florida, Appellee.
No. 62691.
Supreme Court of Florida.
January 24, 1985.
Rehearing Denied April 4, 1985.
*1174 Adam H. Lawrence, Sp. Asst. Public Defender, Miami, for appellant.
Jim Smith, Atty. Gen. and Marti Rothenberg and Richard E. Doran, Asst. Attys. Gen., Miami, for appellee.
OVERTON, Justice.
The appellant, Mario Lara, was convicted of one count of first-degree murder, one count of second-degree murder, and one count of involuntary sexual battery. In accordance with the jury's sentence recommendation, the trial judge imposed the death sentence for the first-degree murder. In addition, she imposed two consecutive ninety-nine year sentences for the second-degree murder and sexual battery convictions. We have jurisdiction, article V, section *1175 3(b)(1), Florida Constitution, and we affirm the convictions and sentences.
The relevant facts are as follows. On July 16, 1981, a Miami police officer was dispatched to meet Francisco Rizo at an apartment where Rizo had discovered the body of his girlfriend, Grisel Fumero. Rizo let the officer into the apartment and directed him to the kitchen where Fumero was lying face-down on the floor in a pool of blood. She had been shot four times. During the investigation of the crime scene, an upstairs tenant notified the police that there was another body in an upstairs bedroom. This body was identified as that of appellant's girlfriend, Olga Elviro. She had been bound and gagged and had been stabbed three times. Evidence introduced at trial indicated that Elviro had also been raped. A handgun found on the premises was determined to have been the weapon that fired at least one of the bullets into Fumero. The police also recovered a serrated knife which was tentatively identified as the weapon used to stab Elviro.
Evidence presented at trial established that, at the time of the homicides, appellant was awaiting trial on charges of robbery and voluntary and involuntary sexual battery. The sexual battery victim was Fumero's 13-year-old sister and Fumero was expected to testify against appellant at trial, which was to have begun the week of the homicides. There also was evidence that Elviro had learned of the charges against the appellant and had threatened to leave him. Further, on the day prior to the homicides, appellant had displayed two handguns and had threatened to kill Elviro and her sister-in-law, who had apparently told Elviro of the charges against appellant.
The evidence further established that, on the day of the homicides, appellant went to the upstairs apartment, woke Tomas Barcelo, and stated that he and Elviro needed to use the apartment. Barcelo left the apartment, went out into the yard, and, about half an hour later, saw appellant leave the apartment alone. Appellant next went to the downstairs apartment where he was admitted by Fumero. He went through the kitchen into his brother's bedroom in the same apartment. At this time Barcelo was in the kitchen at the request of Fumero. Appellant returned to the kitchen with his hands behind his back and told Fumero, "It's your fault that I have lost everything." He then pulled a gun from behind his back and shot Fumero in the stomach. She said, "Mario, Mario, why are you doing that to me?" Appellant replied, "Why am I doing that? Son of a bitch," and continued firing until the gun was empty. Appellant continued to pull the trigger after the gun was empty. Appellant's brother, Arsenio Lara, was in the room at this time and both he and Barcelo told appellant he was a murderer. Appellant retorted, "Oh, I'm a murderer," and, while laughing, started to reload the gun. Appellant's brother and Barcelo, believing they would also be killed, ran out of the apartment Barcelo fled to New York and was not located until just before the trial. The brother, who was found with a blood-spattered watch in his possession, was originally charged with the murders, but was given immunity in exchange for testifying against appellant and the charges against him were dismissed. He subsequently refused to testify and was jailed for contempt. Rizo, who had notified the police of the murder and admitted them to the premises, became a fugitive and was not available at trial.
The appellant was arrested in New Jersey on July 21, 1981, on outstanding warrants for a robbery and sexual battery which occurred before these homicides. He waived extradition to Florida. An indictment was filed on November 17, 1981, charging appellant with two counts of premeditated murder and one count of involuntary sexual battery. The jury convicted appellant of the first-degree murder of Fumero and the second-degree murder and sexual battery of Elviro.
In the penalty phase, Lara presented the testimony of his aunt, Carmen Lara, who stated that appellant had been regularly beaten as a child by his father and, as a result of one of those beatings, had been hospitalized for a month. No testimonial *1176 evidence was presented by the state. The jury, by an eight-to-four vote, recommended the imposition of the death penalty for the murder of Fumero. Prior to the imposition of sentence, the trial court heard testimony from two additional defense witnesses, a psychiatrist and a long-time acquaintance of appellant, who testified concerning appellant's abusive childhood and its effect on his behavior.
The trial court concurred in the jury's advisory sentence and imposed the death penalty, finding three aggravating factors: (1) the appellant was previously convicted of second-degree murder and sexual battery; (2) the murder was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of law; and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The court found that no statutory or non-statutory mitigating factors existed.

Trial Phase.
Appellant challenges his conviction on twelve grounds. In his first contention, appellant claims that the trial court erred in denying his motion for discharge based on the alleged violation of the 180-day speedy trial provision of Florida Rule of Criminal Procedure 3.191. He argues that the speedy trial period for the homicides commenced either when he was arrested in New Jersey by the New Jersey police on July 21, 1981, or when he was arrested by Miami police in New Jersey on July 22, 1981, rather than when he was indicted for the murders on November 17, 1981. Evidence presented to the trial court during a two-day evidentiary hearing on this issue reflects that the Miami police sent a teletype to the New Jersey authorities that indicated there were outstanding Florida warrants for appellant's arrest for a robbery and an involuntary sexual battery that occurred prior to the homicides. The teletype also stated that appellant was wanted for questioning with reference to a homicide. New Jersey police testified that they arrested appellant as a fugitive on the outstanding warrants which were unrelated to the homicide incident. Although the police informed appellant at the time of his arrest that they were investigating the double homicide, they did not inform him that he was under arrest for the homicides. The trial judge found that the appellant was not arrested on the homicide charges until November 17, 1981; that appellant's arrest in New Jersey was pursuant to the two outstanding Florida fugitive arrest warrants; that the Miami police never told the New Jersey police any of the facts about the homicides; that no Florida warrants for the arrest of appellant for the homicides were outstanding at the time of his arrest in New Jersey; and that appellant was never told in New Jersey that he was being arrested for the homicides.
Appellant contends that, at the time of his arrest in New Jersey, the authorities possessed sufficient evidence to establish probable cause to arrest him for the homicides. He argues that our decision in Thomas v. State, 374 So.2d 508 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980), controls by reason of the following language:
[T]he spirit of the Speedy Trial Rule would not condone the withholding of some charges and an arrest on others so as to effectively extend the time periods of the rule where there is ample evidence to support probable cause as to all charges... .
374 So.2d at 513.
We disagree and find that our decision in Thomas supports the trial court's denial of the motion for discharge. In Thomas, the appellant was initially charged with receiving and concealing stolen property. The property in question had been stolen during a burglary/robbery in which the perpetrator had killed one victim and sexually assaulted another. During the search of appellant's house and car, and during subsequent interrogation, the police obtained evidence implicating appellant in the homicide and assault. He was not formally charged with these crimes, however, until almost one year later. We upheld the trial court's *1177 denial of the appellant's motion for discharge based on the alleged violation of the speedy trial rule, finding that the police did not have probable cause to arrest appellant for the homicide and assault at the time he was taken into custody for the stolen property offenses. 374 So.2d at 513-14. We recognized that the state could not purposefully delay filing charges so as to extend the time periods of the speedy trial rule, and concluded that the appellant had failed to establish any prosecutorial abuse with regard to the delayed filings in that case. Id. at 513.
Similarly, in the instant case, the appellant has failed to establish prosecutorial abuse. We note that, of the three critical witnesses in this cause, one was initially charged with the murder, one went into hiding and was not located until just before trial, and the other left and had not been located at the time of the trial. The police had not sufficiently completed their investigation at the time of appellant's arrest in New Jersey so as to have adequate probable cause to charge him with the homicides and, therefore, there was no prosecutorial abuse in delaying the indictment and arrest for the homicides. The limited questioning of appellant in New Jersey did not, under these circumstances, constitute an arrest or a taking into custody with regard to the homicides for the purpose of commencing the speedy trial period of Florida Rule of Criminal Procedure 3.191. We find no violation of the rule and we approve the findings and ruling of the trial court.
In his second point, appellant asserts that the trial court erred in denying his motion to suppress physical evidence found during the allegedly illegal warrantless search of the two apartments where the victims were found. The trial court denied the motion on the grounds that (1) an occupant of the apartment where Fumero was found consented to the search and (2) the search of both apartments was justified by the exigent circumstances exception to the warrant requirement. The trial court found that there was ample evidence to conclude that Rizo, who notified police of the murder of Fumero and admitted them into the apartment, had the authority to consent to the police access to the apartment where Fumero was found.
Appellant asserts that Rizo did not have the authority to admit the police into the apartment and that, assuming Rizo did have the required authority, the consent was improperly proved by inadmissible hearsay evidence. We reject both arguments. There was evidence presented during the suppression hearing that Rizo lived in and had joint control of the searched apartment and that he was authorized to give valid consent to the search of the apartment. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Ferguson v. State, 417 So.2d 631 (Fla. 1982). Further, we find that the hearsay evidence establishing Rizo's consent was properly admitted at the suppression hearing, even though Rizo was unavailable for cross-examination. This Court has previously held that an affidavit for a search warrant may be based on hearsay information. State v. Wolff, 310 So.2d 729 (Fla. 1975) (citing Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on other grounds, United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). See also Blair v. State, 406 So.2d 1103 (Fla. 1981). In addition, we note that the United States Supreme Court in Jones found that "an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay... ." 362 U.S. at 270, 80 S.Ct. at 735. We find no error in the admission of the hearsay evidence in this cause.
Further, without regard to the consensual nature of the entry, we hold that the search of both apartments was justified under the exigent circumstances exception to the warrant requirement. We find that the exigent circumstance exception applies when police are called to the scene of a homicide and that it allows an immediate warrantless search of the area to determine the number and condition of *1178 the victims or survivors, to see if the killer is still on the premises, and to preserve the crime scene. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). In this cause, the police were notified of a single murder and, during their investigation, were informed of another victim. Under the facts of this case, we find that the police were justified in conducting the search of the homicide scene without a warrant and we conclude that the motion to suppress was properly denied.
In his third point, appellant contends that the trial court erred in denying his motion to suppress oral statements taken from him immediately after his arrest in New Jersey, on the ground that they were not preceded by a knowing and intelligent waiver of his sixth amendment rights. The record reflects that appellant, who was a Mariel refugee and spoke only Spanish, was questioned by a Spanish-speaking police officer who read him his Miranda rights from a form printed in Spanish. The officer testified that, after she read the rights in Spanish, appellant indicated that he understood his rights and signed the form. Appellant was subsequently questioned regarding the circumstances of the homicides and his statements were admitted over his objections. Although there is conflicting testimony as to what transpired at the time the statements were given, we find that the record supports the finding of the trial judge that appellant understood his rights and knowingly and voluntarily waived those rights before making the challenged statements. We find no error was committed by the trial judge.
Appellant's fourth issue concerns the trial court's alleged violation of the provisions of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant argues that the trial court improperly excluded for cause two prospective jurors who did not unequivocally state that they would automatically vote against the imposition of the death penalty. In Witherspoon, the United States Supreme Court held that prospective jurors may not be excluded for cause simply because they voice general objections to the death penalty or have conscientious or religious scruples against the infliction of the death penalty. 391 U.S. at 522. The decision, in a footnote, states there should be no exclusion for cause of any prospective juror unless the juror states unequivocally that he would automatically vote against the imposition of the death penalty irrespective of the evidence that might be developed during the trial. See id. at 522, n. 21, 88 S.Ct. at 1777. In Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the United States Supreme Court restated the rule as follows:
[A] juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.
Id. at 45, 100 S.Ct. at 2526 (emphasis supplied).
While this appeal was pending, the United States Supreme Court, in Wainwright v. Witt, ___ U.S. ___, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), receded from the unequivocal automatic vote portion of Witherspoon and reemphasized the Adams rule holding that a juror may be excused for cause if he expresses views that would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Slip op. at 11 (footnote omitted). This is consistent with our recent decision in Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), in which we applied the Adams rule and held that the excusal of prospective jurors for cause was proper, stating:
It would make a mockery of the jury selection process to ... allow persons *1179 with fixed opinions to sit on juries. To permit a person to sit as a juror after he has honestly advised the court that he does not believe he can set aside his opinion is unfair to the other jurors who are willing to maintain open minds and make their decision based solely upon the testimony, the evidence, and the law presented to them.
446 So.2d at 1055-56.
In the instant case, a review of the entire voir dire examination of the two prospective jurors reflects that their views toward the death penalty would substantially impair, if not totally prevent, the proper performance of their duties as jurors. We conclude that the trial judge properly excluded them for cause.
We reject without discussion appellant's remaining contentions that the trial court erred (a) by failing to grant appellant more peremptory challenges; (b) by limiting appellant's right of cross-examination by denying a continuance until a deposition could be transcribed, by limiting the examination of a witness, and by refusing to permit counsel to cross examine one medical examiner upon another medical examiner's report; (c) by admitting gruesome photographs of the victim into evidence; (d) by improperly charging the jury on witness unavailability; and (e) by denying appellant's motions for judgment of acquittal. Appellant also asserts that certain of the prosecutor's comments constituted prejudicial error, requiring reversal. We find that all these issues are without merit. We have reviewed the record in this case and find that there is substantial competent evidence to support appellant's convictions. We find no reversible error in the guilt phase of appellant's trial.

Sentencing Phase.
In the sentencing phase, appellant raises five claims of error. He first contends that the trial court erred by charging the jury upon only those aggravating and mitigating circumstances which the court thought relevant. The record reflects that the trial court instructed on the three aggravating and two mitigating circumstances which it deemed relevant and further permitted the jury to consider any other aspect of the defendant's character or record and any other circumstance of the offense bearing on mitigation. We find no error. The judge followed the standard jury instructions and specifically addressed all circumstances and gave instructions for those aggravating and mitigating circumstances for which evidence had been presented. We find that appellant was not prejudiced by the instructions given. See Jennings v. State, 453 So.2d 1109 (Fla. 1984).
Second, appellant argues that the trial court erred by not instructing the jury on the mitigating circumstances of his age and his lack of prior significant criminal history. Appellant made no attempt to present any evidence regarding his lack of a prior significant criminal history. To accept appellant's argument, and mandate the giving of this instruction, would require the state to present evidence to negate this mitigating circumstance and would, in effect, transform this factor into an aggravating circumstance. Further, the record reflects that appellant did have a prior criminal history, at least to the extent of his conviction for the second-degree murder and sexual battery of his girlfriend. We agree with the trial judge that appellant's age of twenty-five did not require an instruction on age as a mitigating circumstance. See Simmons v. State, 419 So.2d 316 (Fla. 1982); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). We conclude that there was no error in the instructions given by the trial judge regarding aggravating and mitigating circumstances.
In his third point, appellant argues that the trial judge erred in determining that three aggravating circumstances and no mitigating circumstances applied to this homicide. The court found that appellant had been previously convicted of a felony involving the use or threat of violence in *1180 accordance with section 921.141(5)(b), Florida Statutes (1981). This aggravating circumstance was properly established by evidence of appellant's conviction of the second-degree murder and sexual battery of Elviro. See Elledge v. State, 408 So.2d 1021 (Fla. 1981), cert. denied, 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293, 67 L.Ed.2d 825 (1982); King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529 (1981); Lucas v. State, 376 So.2d 1149 (Fla. 1979).
Appellant's fourth point challenges the trial judge's determination that the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws under the provisions of section 921.141(5)(g), Florida Statutes (1981). Appellant argues that the court erred in finding that he killed Fumero to eliminate her as a witness in the pending sexual battery case and asserts that this factor was not proven beyond a reasonable doubt. Appellant argues that a more reasonable explanation for the killing was his emotionally overwrought condition immediately following his killing of his girlfriend. It is further asserted that this explanation is plausible considering the fact that the jury returned a second-degree murder verdict for the killing of the girlfriend, rather than a first-degree premeditated murder verdict. These facts, it is argued, establish that this aggravating circumstance was not proven beyond a reasonable doubt. We disagree. The record reflects that Fumero was expected to be called as a witness by the state in the appellant's trial for the sexual battery of Fumero's sister. That trial was scheduled to begin the same week appellant murdered Fumero. There is no question that her willingness to testify brought about her death. We find this aggravating circumstance properly applies under the facts of this case.
In his fifth point, appellant argues that the trial judge improperly determined that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification under the provisions of section 921.141(5)(i), Florida Statutes (1981). The record reflects that, after committing sexual battery and murdering his girlfriend, appellant came down to the apartment where Fumero was residing with the clear intent to kill her. After killing Fumero, appellant began to reload his gun, while laughing and threatening both his brother and his roommate. We find that the trial court properly found that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See Middleton v. State, 426 So.2d 548 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); and Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).
We agree with the trial judge that the only mitigating circumstance arguably applicable in this cause was the history of abuse suffered by appellant as a child and the difficulty of his childhood. We also agree, however, that the trial court could properly conclude that appellant's actions in committing this murder were not significantly influenced by his childhood experience so as to justify its use as a mitigating circumstance.
In his final point, appellant asserts that the prosecutor made an improper comment in closing argument at the sentencing phase which was prejudicial and requires a new sentencing hearing. The prosecutor made the comment that this murder was more aggravated than a "normal" murder. The court sustained an objection by appellant's counsel, but there was neither a request for a curative instruction nor a motion for mistrial. Under the circumstances, we find no error. See Simpson v. State, 418 So.2d 984 (Fla. 1982), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983); Clark v. State, 363 So.2d 331 (Fla. 1978).
*1181 From our review of the entire record, the imposition of the death penalty in this cause is proportionately correct. For the reasons expressed, we affirm appellant's convictions and sentence of death.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.