920 So.2d 117 (2006)
J.D., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-3074.
District Court of Appeal of Florida, Fourth District.
January 25, 2006.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
*118 WARNER, J.
J.D. appeals her adjudication of delinquency for possession of marijuana, which was based on the discovery of the cannabis in her purse at school. The central question in this appeal is whether a school official must have reasonable suspicion to detain and question a student concerning criminal activity or a violation of school rules. Although the school official must have reasonable suspicion to search a student, see New Jersey v. T.L.O., 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), we hold that in a school setting a school official's removal of a student from class to question the student does not violate the Fourth Amendment so long as the official is not acting arbitrarily or capriciously. We therefore affirm the trial court.
A Taravella High School assistant principal informed School Security Officer Edward MaGuire that one of the school's Crime Watch students had reported information regarding J.D. The school Crime Watch consisted of particular students who informed school officials of illegal activity occurring on the campus. MaGuire testified that such reports were seventy-five percent reliable. Unfortunately, the trial court erroneously sustained a hearsay objection to the contents of the tip, even though hearsay evidence is admissible in suppression hearings. See Lara v. State, 464 So.2d 1173, 1177 (Fla.1985); State v. Cortez, 705 So.2d 676, 679 (Fla. 3d DCA 1998). Nevertheless, as a result of the tip, MaGuire went to J.D.'s classroom and asked her to accompany him to the office. Once in the office, MaGuire asked J.D. if she had anything illegal, and J.D. readily admitted that she did, giving MaGuire five baggies of marijuana. MaGuire did not conduct any type of search because J.D. voluntarily and readily gave him the drugs in her possession. J.D. was arrested and charged with possession of marijuana.
J.D. moved to suppress the marijuana, contending that her detention was illegal because it was based upon an unsubstantiated tip. J.D. argued that because there was no reasonable suspicion to detain her, the fruits of the subsequent seizure should be suppressed. The trial court disagreed, concluding that the detention of J.D. under the circumstances was reasonable. Because the suppression ruling was dispositive, *119 J.D. pled nolo contendere to the charge, reserving her right to appeal.
The issue presented in this appeal requires us to determine which test should be applied to justify a detention of a student for investigation of criminal conduct. In New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court held that the Fourth Amendment's prohibition on unreasonable searches and seizures applied to searches conducted by school officials. The Court indicated that a search in the school setting does not require probable cause to pass constitutional muster. Instead, legality of a student search must be judged by whether the search was reasonable under all the circumstances. However, T.L.O. involved a search, not a detention. Therefore, the Court did not decide the standard to be applied to detain a student for questioning. Nevertheless, T.L.O. is the starting point for the Fourth Amendment analysis of this issue.
A teacher found T.L.O. and another student smoking in the lavatory. As this was a school rule violation, the teacher took the children to the principal's office. T.L.O. denied smoking and the principal accused her of lying. He then opened her purse, revealing cigarettes. When he removed the cigarettes, he noticed rolling papers, frequently associated with drug use. He then searched the purse more carefully and found marijuana as well as other drug paraphernalia. Ultimately, the state brought delinquency charges against T.L.O., and in due course she moved to suppress the evidence against her claiming the search was in violation of the Fourth Amendment. After the case wound its way through the state courts, the Supreme Court took jurisdiction to determine the application of the Fourth Amendment to the conduct of public school officials.
Rejecting the state's argument that the Fourth Amendment did not apply because the school officials were acting in loco parentis, the Court concluded that the officials were acting as agents of the state when conducting searches and seizures for the purposes of enforcing criminal laws or school disciplinary rules. Thus, the Fourth Amendment applied to searches conducted by school officials. However,
Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place. The determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails."
Id. at 337, 105 S.Ct. 733 (quoting Camara v. Mun. Court, 387 U.S. 523, 536-37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). The court discussed the invasion of privacy entailed by a search and refused to say that a child at school had no legitimate expectation of privacy. It noted that children frequently bring personal items to school, sometimes in purses, and they should not be expected to waive their privacy interest in these items simply by bringing them to school. Nevertheless, weighing against a student's privacy interest is the school's need to foster an environment that is safe for education. Thus, "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." Id. at 339, 105 S.Ct. 733.
The Court struck a balance between the two competing interests and fashioned a test for searches conducted in a school:

*120 The school setting also requires some modification of the level of suspicion of illicit activity needed to justify a search.
* * *
We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," Terry v. Ohio, 392 U.S., at 20, 88 S.Ct., at 1879; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
Id. at 340-42, 105 S.Ct. 733 (footnotes omitted). The Court then determined that the search of T.L.O. was reasonable under the circumstances.
In T.L.O. the Court determined that the standard of probable cause to conduct a search could be lowered to a reasonableness standard when such a search is conducted in a school setting. T.L.O. did not specifically address the standard for making a stop or detaining a student in a school setting. Generally, the standard for stopping or "seizing" a person is whether a state agent has "reasonable suspicion" that a crime is being committed or has been committed. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Terry describes the interest that the Fourth Amendment protects:
[W]herever an individual may harbor a reasonable `expectation of privacy,' he is entitled to be free from unreasonable governmental intrusion. Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted. For `what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.'
Id. at 9, 88 S.Ct. 1868 (citations omitted).
It is quite plain that the Fourth Amendment governs `seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime  `arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person.
Id. at 16, 88 S.Ct. 1868.
The seizure of a person involves depriving that person of the freedom to walk away. T.L.O. and Terry both demand a balancing of the nature and extent of the governmental interest involved against the invasion of the right involved.
In the case of a student at school, the student's liberty interest in being left alone or being free to "walk away" from *121 authority is obviously extremely limited. Students are told when to be in class, when to exit class, and where to sit. They can be called to the dean's office or the principal's office for a variety of reasons. The California Supreme Court has considered this very issue in In re Randy G., 26 Cal.4th 556, 110 Cal.Rptr.2d 516, 28 P.3d 239 (2001), and noted:
Encounters on school grounds between students and school personnel are constant and much more varied than those on the street between citizens and law enforcement officers. While at school, a student may be stopped, told to remain in or leave a classroom, directed to go to a particular classroom, given an errand, sent to study hall, called to the office, or held after school. Unlike a citizen on the street, a minor student is "subject to the ordering and direction of teachers and administrators.... [A student is] not free to roam the halls or to remain in [the] classroom as long as she please[s], even if she behave[s] herself. She [is] deprived of liberty to some degree from the moment she enter[s] school, and no one could suggest a constitutional infringement based on that basic deprivation."
* * *
Thus, when a school official stops a student to ask a question, it would appear that the student's liberty has not been restrained over and above the limitations he or she already experiences by attending school.
Id. at 243-44 (citations omitted).
The invasion of a student's freedom of movement by being stopped and questioned is minimal, because the student is already restrained in his or her freedom in that regard by being present at school. Contrast that minimal invasion to the substantial governmental interest in keeping the school environment safe and secure for the students. As the California Supreme Court noted:
The governmental interest at stake is of the highest order. "[E]ducation is perhaps the most important function of state and local governments." (Brown v. Board of Education (1954) 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873.) "Some modicum of discipline and order is essential if the educational function is to be performed." (Goss v. Lopez [(1975)], supra, 419 U.S. [565] at p. 580, 95 S.Ct. 729 [42 L.Ed.2d 725].) School personnel, to maintain or promote order, may need to send students into and out of classrooms, define or alter schedules, summon students to the office, or question them in the hall. Yet, as the high court has observed, school officials "are not in the business of investigating violations of the criminal laws ... and otherwise have little occasion to become familiar with the intricacies of this Court's Fourth Amendment jurisprudence." (Skinner v. Railway Labor Executives' Assn. (1989) 489 U.S. 602, 623, 109 S.Ct. 1402, 103 L.Ed.2d 639.) Those officials must be permitted to exercise their broad supervisory and disciplinary powers, without worrying that every encounter with a student will be converted into an opportunity for constitutional review. To allow minor students to challenge each of those decisions, through a motion to suppress or in a civil rights action under 42 United States Code section 1983, as lacking articulable facts supporting reasonable suspicion would make a mockery of school discipline and order.
Id. at 245. The California Supreme Court concluded that in balancing the interests of the student with those of the school, that the test to be applied in analyzing a stop of a student is "whether the school officials' *122 conduct was arbitrary, capricious, or undertaken for purposes of harassment." Id.
As the California court noted, Florida courts have used the same standard, albeit in a case decided prior to T.L.O. In W.J.S. v. State, 409 So.2d 1209 (Fla. 1st DCA 1982), the minor was standing in a school corridor talking to other students when a teacher walked by and believed that the boys were acting suspiciously, because they looked away from her. The teacher asked a security guard to take the boys to the principal's office. There, a small purse containing marijuana was found on one of the boys.
After W.J.S.'s arrest, he moved to suppress claiming only that the initial detention by the teacher was illegal as lacking in reasonable suspicion. The court said:
We agree that there was no reasonable suspicion at the time of the initial detention in this case, within the meaning of that term as previously applied to school searches. See State v. F.W.E., 360 So.2d 148 (Fla. 1st DCA 1978). However, we do not agree that school officials must have a reasonable suspicion in order to detain a student and take him, as stated in this case, "to be checked out" on the school premises. The stipulated intent to search does not in our opinion render the detention unlawful....
* * *
Our conclusion is simply that criminal law standards for a legal stop do not control the mere detention of appellant as a student in this case.
Id. at 1210. The court thus affirmed the denial of the motion to suppress.
The Third District Court of Appeal also applied a lesser standard of reasonableness in determining that a stop of a student was permissible in S.D. v. State, 650 So.2d 198 (Fla. 3d DCA 1995). There, the school officials received an anonymous tip that S.D. was seen in his physical education class with a bulge in his pants which was believed to be a handgun. The school security official approached S.D. while in class and told him to go outside. The official asked S.D. if the official could search him, and S.D. refused. However, as S.D. walked into the locker room, a firearm dropped out of his pants. Id. The court determined that the stop was reasonable, even based upon an anonymous tip, because of the great concern the school would have for anyone possessing a gun in the school and the number of students in the gym.
We agree with the analysis of the California Supreme Court and that of W.J.S. What is reasonable under all of the circumstances for Fourth Amendment purposes at a school is not the same as what may be reasonable for an adult on the street. When school authorities receive information, whether verified or not, involving illegal activities occurring on their campus, calling the suspect student out of class to investigate the report is a reasonable and minimal step in that investigation. It is not arbitrary or capricious or harassing, unless of course there are extenuating circumstances or there is a pattern of conduct with respect to that particular student which would indicate capriciousness or harassment. While the testimony in this case may not have established that the school official had reasonable suspicion to search J.D., no search occurred, because the student voluntarily gave the drugs to the school official.
Having concluded that the trial court correctly determined that the stop was reasonable under all of the circumstances, we affirm.
GUNTHER and HAZOURI, JJ., concur.