PER CURIAM.
J.B. Parker was convicted and sentenced to death for the 1982 murder of Frances Slater. This Court affirmed Parker’s convictions and sentence of death on direct appeal. Parker v. State (Parker I), 476 So.2d 134, 140 (Fla.1985). In 1998, Parker was granted a new penalty phase due to the State’s suppression of exculpatory evidence that suggested a codefendant, and not Parker, shot the victim. State v. Parker (Parker V), 721 So.2d 1147, 1147, 1149-50 (Fla.1998). After the new penalty-phase proceeding, Parker was again sentenced to death, and this Court affirmed his sentence on direct appeal. Parker v. State (Parker VI), 873 So.2d 270, 275 (Fla.2004). In the current proceeding, Parker filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, raising issues concerning the new penalty phase. The postconviction court denied Parker’s motion, and Parker has appealed that denial to this Court. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction. See art. V, § 3(b)(1), Fla. Const.
Parker raises claims that his counsel rendered ineffective assistance in the penalty phase, that the State withheld favorable information, that the State made a false statement during trial, and that the postconviction court erred during the evi-dentiary hearing on his postconviction motion. We conclude that Parker’s counsel was deficient for stipulating to the admissibility of a statement Parker made to law enforcement on May 7, 1982. We also conclude that the State withheld favorable information, specifically the complete terms of a cooperation agreement with codefendant Terry Johnson. However, because Parker has failed to demonstrate prejudice on these claims and his remaining claims are without merit, we affirm the postconviction court’s denial of relief.
FACTS AND PROCEDURAL HISTORY
J.B. Parker is one of four defendants convicted of the murder of eighteen-year-old Francis Slater and is one of the three defendants sentenced to death for the murder. Parker’s case has had a long procedural history. A brief summary of the facts as presented at Parker’s first trial are set forth in Parker V, 721 So.2d at 1148, as follows:
Parker was convicted of kidnaping, robbery with a firearm, and first-degree murder. Briefly, the testimony at trial reflected the following. In 1982, Parker and three other defendants, John Earl Bush, Alphonso Cave, and Terry Wayne Johnson, robbed a convenience store. Money was taken from the store and the female store clerk (the victim) was also taken from the store and placed in Bush’s car. The victim was later found dead; she had been shot and stabbed. Death was caused by a gunshot wound to the back of the head. Bush’s girlfriend [Georgeann Williams] testified that Parker had admitted to her that he shot the victim and that Bush had stabbed her. The girlfriend’s mother and sister testified that she told them of Parker’s confession. Parker’s pre-trial statements to police regarding the crime were also introduced and Parker also testified at trial. In those statements, he implicated himself in the crimes but denied being the shooter.
After the trial, Parker was sentenced to death, following an eight-to-four jury recommendation of death. Parker I, 476 So.2d at 136. This Court affirmed Parker’s convictions and sentence on direct appeal. Id. at 140.
*851 Two of Parker’s codefendants, John Bush and Alphonso Cave, were convicted of first-degree murder in separate trials and sentenced to death. Bush v. State, 461 So.2d 936 (Fla.1984); Cave v. State, 727 So.2d 227, 228 (Fla.1998). The other participant, Terry Johnson, was convicted of kidnapping and felony murder and sentenced to life in prison. Johnson v. State, 484 So.2d 1347 (Fla. 4th DCA 1986). Bush was executed in 1996. Cave remains on death row.
Parker’s first motion for postconviction relief was denied, and the denial was affirmed by this Court. Parker v. State (Parker II), 542 So.2d 356 (Fla.1989). This Court also denied Parker’s habeas corpus petition. Parker v. Dugger (Parker III), 550 So.2d 459 (Fla.1989). Parker’s federal habeas corpus petition was also denied. Parker v. Singletary (Parker IV), 974 F.2d 1562 (11th Cir.1992).

The Newly Discovered Evidence Leading to a New Penalty-Phase Proceeding

After discovering evidence that had been withheld by the State, Parker filed a successive motion for postconviction relief on the basis of newly discovered evidence and a Brady[1] violation. Parker V, 721 So.2d at 1149. The circuit court found that the State had withheld evidence favorable to Parker, which indicated that codefendant Bush stabbed the victim and that codefen-dant Cave shot her.
This favorable information stemmed from a resentencing proceeding involving codefendant Cave. In that proceeding, the State introduced testimony from Michael Bryant, who testified that he shared a cell with Cave and overheard a conversation between Bush and Cave suggesting that Bush stabbed the victim and that Cave shot her. Id. at 1149. Later, Cave told Bryant that if he told anyone, he would see that Bryant was “taken care of.” Cave also beat Bryant, sending him to the hospital. Id. Bryant reported the assault to Lieutenant Art Jackson and told him of the conversation that he had overheard. Jackson also testified at Cave’s resentenc-ing and corroborated Bryant’s testimony. See id. None of this information had been disclosed to Parker. Id. at 1149.
After an evidentiary hearing in Parker’s case, the trial court determined that a new penalty-phase proceeding was warranted but that a new guilt-phase proceeding was not. Id. This Court agreed. Id. at 1147. In upholding the trial court’s grant of a new penalty phase, this Court reasoned:
This evidence would have assisted in impeaching the testimony of Bush’s girlfriend, which was the sole evidence to show that Parker was the shooter. Further, Parker would have been able to use this evidence to show that the State introduced this evidence in Cave’s resen-tencing to prove that Cave, rather than Parker, was the shooter. Under these circumstances, we must agree with the trial judge’s conclusion that confidence in the jury’s recommendation of death has been undermined, especially given that the jury recommendation for death in Parker’s case was eight-to-four and that codefendant Johnson, who was not identified as the shooter by the State, received a life sentence even though he participated in the crime.
Id. at 1151 (emphasis added).

The New Penalty-Phase Proceeding

At Parker’s new penalty-phase proceeding, the following evidence was introduced by the State, which relied primarily on the testimony of codefendant Johnson and a *852 statement made by Parker to Detective David Powers on May 7,1982:
[T]he State presented witnesses to establish the facts of the original crime and Parker’s culpability, including code-fendant Johnson, who recounted the events leading to Slater’s murder.
Johnson testified that the first time the defendants went to the convenience store, all four went in to buy potato chips and that when they returned to the store later that evening, Parker went into the store with Cave and Bush to commit the robbery. Johnson also testified that when they arrived at the location where Slater was killed, Parker took the gun from Cave. Johnson stated that he heard a shot but did not know who shot Slater, that after the murder Parker told Bush to get rid of the knife, and that the four later split the money taken from the store.
The State also introduced a statement made by Parker on May 7, 1982, when he went with Detective David Powers to the area where the victim was killed. During this time, Parker stated that Bush both stabbed and shot the victim, indicated where Bush had thrown the knife after the murder, and recounted that the four defendants discussed killing a sheriffs deputy, Timothy Bargo, who stopped the car in which they were riding on the night of the murder.
Parker VI, 873 So.2d at 275. The State also presented testimony from Georgeann Williams, who testified that she was dating codefendant Bush at the time of the crime and visited him when he was in jail after being arrested. After she spoke with Bush about what happened during the crime, she also visited Parker, whose cell was nearby. Parker told Williams that Bush stabbed the victim and that Parker shot her. Parker told Williams that it would be her word against his if she repeated what he told her. He also told Williams that Bush had a record and that it would be blamed on Bush.
Parker presented the following evidence, including testimony from Richard Barlow, the prosecutor during Cave’s resentencing:
Parker presented several witnesses in mitigation. Of significance for the purposes of Parker’s appeal is the testimony of Richard Barlow, who was the prosecutor during Cave’s 1993 penalty phase. Barlow stated that he relied on the testimony of Michael Bryant, who was in the same cell as Cave at the Martin County [J]ail, to establish that Cave was a principal in Slater’s murder. Barlow testified that Bryant went to Arthur Jackson, who ivas running the jail at the time, and told Jackson that he overheard a conversation between Cave and Bush, in which Cave admitted that he “popped a cap” in the back of Slater’s head.
In addition, portions of Michael Bryant’s testimony given during Cave’s 1993 penalty phase were read into the record. Bryant testified about the conversation he overheard between Cave and Bush:
Well what I overheard, Bush was a couple of cells down and what it was, you know, they started talking about it and Bush told Cave, says, we wouldn’t never be in here if you didn’t try to burn her with a cigarette butt. He says, well, you stabbed her in the stomach and Bush told Cave, he says, well, you popped a cap in the back of her head.
Id. at 276.
The jury returned a verdict recommending a sentence of death by a vote of eleven to one. Id. at 276. The trial court found *853 five aggravating factors,[2] one statutory mitigator (age of nineteen years old at the time of the crime), which was given very little weight, and thirteen nonstatutory mitigators.[3] Among the nonstatutory miti-gators, the court assigned moderate weight to Parker’s cooperation with law enforcement and the fact that Parker left school to help his family. The remaining nonstatutory mitigation was given little or very little weight. Id. The trial court sentenced Parker to death. Id. at 277.
On appeal, Parker raised numerous claims,[4] including that the trial court erred in denying the motion to suppress his May 7, 1982, statement. During the pendency of the direct appeal, this Court relinquished jurisdiction to the trial court to conduct an evidentiary hearing regarding the motion to suppress Parker’s May 7 statement. Id. at 278. The trial court found that the May 7 statement was properly admitted. Id. at 279. This Court *854 agreed and affirmed Parker’s sentence of death. Id.

The Present Rule 3.851 Motion for Postconviction Relief

Parker raised numerous claims in the instant motion for postconviction relief. The postconviction court held an evidentia-ry hearing on several of the claims.[5] At the evidentiary hearing, the following witnesses testified: Investigator Sue Gent; Richard Barlow (the prosecutor in code-fendant Cave’s 1993 resentencing proceeding); David Lamos (Parker’s defense counsel during his resentencing proceeding); Terry Wayne Johnson (a codefendant who testified in Parker’s resentencing proceeding); and attorney expert Kevin Anderson (who was called to testify as to trial counsel’s conduct during the resentencing proceeding).
Parker raises seven claims for this Court’s review: (1) trial counsel was ineffective for stipulating to the use of inadmissible evidence at the hearing on the motion to suppress Parker’s May 7, 1982, statement; (2) trial counsel was ineffective for failing to properly impeach Georgeann Williams; (3) trial counsel was ineffective for failing to present testimony from Richard Barlow that he believed the testimony of Michael Bryant; (4) trial counsel was ineffective for failing to impeach Terry Wayne Johnson based upon the agreement he struck with the State to testify consistent with his grand jury testimony; (5) counsel’s deficiencies, when viewed cumulatively, deprived Parker of a fair resen-tencing proceeding; (6) the postconviction court erred in not granting a new penalty phase based upon a Brady violation (the prosecution’s failure to disclose the complete terms of the cooperation agreement, misrepresentation of the terms of that agreement, or both); and (7) the postcon-viction court erred in sustaining the State’s objection to Parker’s attempt to present *855 expert testimony of attorney ineffectiveness.
ANALYSIS
In analyzing Parker’s claim, we first address his claims of ineffective assistance of counsel. Then, we discuss his claims concerning the cooperation agreement with codefendant Johnson. Finally, we discuss Parker’s claim that the postconviction court erred during the evidentiary hearing.

I. Ineffective Assistance of Counsel Claims

Following the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Schoenwetter v. State, 46 So.3d 535, 546 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
“Penalty phase prejudice under the Strickland standard is measured by whether the error of trial counsel undermines this Court’s confidence in the sentence of death when viewed in the context of the penalty phase evidence and the miti-gators and aggravators found by the trial court.” Hurst v. State, 18 So.3d 975, 1013 (Fla.2009). That standard does not “require a defendant to show ‘that counsel’s deficient conduct more likely than not altered the outcome’ of his penalty proceeding, but rather that he establish ‘a probability sufficient to undermine confidence in [that] outcome.’” Porter v. McCollum, -U.S.-, 130 S.Ct. 447, 455-56, 175 L.Ed.2d 398 (2009) (quoting Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052).

Summary Denial Standard

Rule 3.851 provides certain pleading requirements for initial and successive postconviction motions. Fla. R.Crim. P. 3.851(e)(l)-(2). For example, the motion must state the nature of the relief sought, Fla. R.Crim. P. 3.851(e)(1)(C), and must include “a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought.” Fla. R.Crim. P. 3.851(e)(1)(D). An evidentiary hearing should be held “whenever the movant makes a facially sufficient claim that requires a factual determination.” Gore v. State, 24 So.3d 1, 11 (Fla.2009) (quoting Owen v. State, 986 So.2d 534, 543 (Fla.2008)). However, “[p]ostconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record.” Id. (quoting Owen, 986 So.2d at 543).

Standard of Review When Evidentiary Hearing Is Granted

Both prongs of the Strickland test present mixed questions of law and fact. Sochor v. State, 883 So.2d 766, 771 (Fla.2004). “In reviewing a trial court’s ruling after an evidentiary hearing on an ineffective assistance of counsel claim, this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application *856 of the law to those facts.” Mungin v. State, 982 So.2d 986, 998 (Fla.2006).
A. Stipulating to Evidence for the Motion to Suppress Parker’s May 7, 1982, Statement
In this claim, Parker contends that trial counsel was ineffective for stipulating to the evidence used to decide whether his May 7, 1982, statement was admissible. Parker’s May 7 statement was admitted during the resentencing proceeding through the testimony of Detective Powers. Because Parker had invoked his right to counsel prior to making the May 7 statement, the admissibility of that statement under United States Supreme Court precedent turns on whether Parker initiated the May 7 contact with law enforcement. See Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that under the Fifth Amendment, once an accused person in custody has expressed his or her desire “to deal with the police only through counsel, [that person] is not subject to further interrogation by the authorities until counsel has been made available ... unless the accused himself initiates further communication, exchanges, or conversations with the police”).
The stipulated evidence included hearsay statements made by Detective Powers, stating that he was told Parker had contacted the police department and wished to cooperate. By stipulating to this evidence, Parker asserts, trial counsel failed to preserve his right to object to the admissibility of the evidence and to appeal an adverse ruling on it. Parker contends that because the only evidence that he initiated the May 7 contact with law enforcement would have been inadmissible absent trial counsel’s stipulation, this statement would have been suppressed.
In analyzing this claim, we begin by setting forth the relevant facts and procedural history. After being arrested, Parker made two statements to the police, the second of which is at issue in this claim. The first statement was on May 5, 1982, when Parker was apprehended by the police and brought to the station for questioning — that statement is not the subject of this claim. On appeal from the denial of Parker’s federal habeas petition, the Eleventh Circuit concluded that Parker’s May 5 statement was taken in violation of Parker’s Fifth Amendment right to counsel. Parker IV, 974 F.2d at 1574. The State did not challenge the Eleventh Circuit’s ruling and did not seek to introduce the May 5 statement during the new penalty phase. Parker VI, 873 So.2d at 277-78.
The second statement, which is the focus of this claim, took place on May 7, 1982, when Parker accompanied Detective Powers on a tour of the crime scene, starting at the convenience store. Prior to the resentencing proceeding, Parker filed a motion to suppress that focused primarily on the May 7 statement. The State filed a motion to quash, arguing that Parker was barred by the law of the case from attempting to raise the issue. The trial court granted the State’s motion to quash. At resentencing, Detective Powers testified as to the events of May 7.
On direct appeal, Parker argued that the trial court should have granted an eviden-tiary hearing on the motion to suppress. After oral argument, this Court relinquished jurisdiction to the trial court to conduct an evidentiary hearing. Parker v. State, No. SC01-172, order at 1 (Fla.Sup. Ct. Oct. 17, 2002). The attorney who represented Parker during the resentencing proceeding also represented him on appeal to this Court and in the relinquishment proceeding.
*857 Upon relinquishment, the parties filed a stipulation to establish the evidentiary record for the motion to suppress. In lieu of an evidentiary hearing, the parties agreed that eighteen exhibits would “constitute the evidentiary record for purposes of disposing of the Defendant’s Motion to Suppress filed October 1, 1999, and in lieu of further testimony.” The stipulation further provided that the exhibits would “be admissible in evidence "for purposes of [the] court’s determination of that motion.”
Among other things, the stipulated record included Detective Powers’ 1982 suppression hearing testimony, 1982 deposition, and 2002 affidavit. Detective Powers stated during his 1982 deposition: “I don’t recall who it was that had told me that Parker had contacted someone at the Sheriffs Department and indicated that he wished to cooperate in the investigation.” However, in the 1982 suppression hearing after his deposition, Powers testified: “I had been directed down to the jail by Captain Crowder, my supervisor, who had advised that Mr. Parker had wished to speak with investigators from our department and that he wished to cooperate with us.” Then, in a 2002 affidavit, Powers stated differently:
I do not recall who it was that' had told me that Parker had contacted someone at the Sheriffs department and indicated that he wished to cooperate in the investigation.... I previously testified at the 1982 motion to suppress I thought that Captain Crowder was that person. However, Captain Robert Crowder ... has advised me that he was not that person....
... Because I now know that Captain Crowder did not give me that command, I now believe that Sheriff Holt did.
However, Sheriff Holt denied having any further contact with Parker after May 5.[6] Powers testified that Parker was “totally cooperative” during the May 7 interview and that Parker signed a waiver of rights form indicating that he wished to show Powers where the knife was located.
The stipulated record also contained Parker’s specific denials of initiating the May 7 contact. Additionally, there was evidence that Parker refused to take police to find the knife between the May 5 and May 7 interviews.
After considering the stipulated record, the trial court entered an order denying the motion to suppress, finding among other things that Parker initiated contact with law enforcement on May 7. In support of this finding, the trial court stated: “On May 7, 1982, Detective Lieutenant David Powers, also of the Martin County Sheriffs Department, received a call from Sheriff Holt who advised him that Parker had now contacted someone at the Sheriffs Department and indicated that he wished to speak with the detectives and cooperate with the investigation.” State v. Parker, No. 82-912CF, order at 4-5 (Fla. 5th Cir.Ct. Feb. 12, 2008).
After the case returned to this Court, counsel asserted that the trial court’s denial of Parker’s motion to suppress was in error. This Court recognized that “the admissibility of Parker’s [May 7] statements to Powers ... turns on whether Parker initiated the communication with Powers and, if so, whether Parker’s waiver of rights was valid.” Parker VI, 873 So.2d at 280. The Court noted:
The stipulated record before the trial court contained conflicting evidence on whether Parker initiated the May 7 interview with Detective Powers. Parker stated through an affidavit that he did *858 not initiate contact with the sheriffs office. Detective Powers stated, to the contrary, that he was directed by the sheriffs office to speak to Parker pursuant to Parker’s request.

Id.

After reviewing the stipulated record, this Court held that competent, substantial evidence supported the trial court’s finding that Parker initiated the May 7 contact. Id. at 279. This Court rejected the argument by Parker’s counsel that Detective Powers’ testimony in the stipulated record could not be considered competent to establish that Parker initiated the May 7 interview because it was hearsay. Id. at 280-81. The Court rejected this argument because Parker had previously stipulated to the admissibility of the evidence:
Parker stipulated to the admissibility of this evidence and cannot now assert that the trial court was precluded from considering Powers’ testimony in addressing the motion to suppress. See Laws v. State, 365 So.2d 7, 8-9 (Fla. 4th DCA 1977) (“[T]he general rule is that otherwise inadmissible evidence, received without objection, may properly be considered in determining the facts in issue.”).
Id. at 281. The Court also noted other facts evidencing that Parker was generally eager to communicate with the police regarding the murder. See id. The Court further concluded that under the totality of the circumstances, Parker’s waiver of rights was knowing and intelligent. Id. Thus, the Court affirmed the trial court’s order denying Parker’s motion to suppress.
We now turn to the consideration of Parker’s ineffectiveness claim based on the stipulation to the admissibility of Detective Powers’ statements, a claim that the postconviction court summarily denied.[7] The State asserts that this claim is procedurally barred, contending that Parker cannot revisit an issue already covered on direct appeal by arguing ineffectiveness of counsel. We disagree. This Court has explained the distinction between claims that are cognizable on direct appeal and claims that are cognizable in postconviction:
Whereas the main question on direct appeal is whether the trial court erred, the main question in a Strickland claim is whether trial counsel was ineffective. Both claims may arise from the same underlying facts, but the claims themselves are distinct and — of necessity— have different remedies: A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal.
Bruno v. State, 807 So.2d 55, 63 (Fla.2001) (footnotes omitted). In this case, the claim raised on direct appeal was that competent, substantial evidence did not support a finding that Parker initiated contact because the evidence supporting such a finding was hearsay. Parker VI, 873 So.2d at 280-81. This is distinct from the claim raised here — that counsel was ineffective for stipulating to the admissibility of the evidence. That stipulation was the basis for this Court rejecting the claim raised on direct appeal. We conclude that Parker is not attempting to relitigate the claim raised on direct appeal and, thus, the instant claim is not procedurally barred.
Turning to the merits of Parker’s ineffectiveness claim, we first address *859 whether Detective Powers’ statements in the stipulated record would have been admissible in a suppression hearing absent the stipulation. If the evidence would have been admissible, counsel cannot be deficient for stipulating to it. Further, Parker would be unable to demonstrate prejudice.
Detective Powers’ statements in the stipulated record regarding whether Parker initiated contact are hearsay. See § 90.801(l)(c), Fla. Stat. (2010) (“‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”). These statements were admitted to prove the truth of the matter asserted — that Parker initiated the May 7 interview. Further, these statements were made by someone other than the declarant, Powers. Moreover, in the most recent affidavit, Powers stated that he did not recall who it was that had told him that Parker had contacted the Sheriffs office. None of the statements made by Powers falls under a statutory exception to hearsay, and the language of the evidence code regarding hearsay encompasses hearings as well as trials. The State contends, however, that hearsay is admissible in suppression hearings.
We reject the adoption of a broad rule that hearsay is always admissible in suppression hearings. The State cites Lara v. State, 464 So.2d 1173 (Fla.1985), and State v. Cortez, 705 So.2d 676 (Fla. 3d DCA 1998), in support of its contention that hearsay is admissible in pretrial hearings, including suppression hearings. We disagree with the State’s broad interpretation of Lara.
In Lara, this Court did not hold that hearsay evidence is always admissible at suppression hearings. The issue in Lara concerned whether consent to a warrant-less search could be established by the admission of hearsay evidence in a suppression hearing. 464 So.2d at 1175, 1177. In rejecting the defendant’s claim that the motion to suppress should have been granted, the Court noted that hearsay can provide the basis for issuance of a search warrant as well as the basis for an officer to act without a warrant. Thus, the Court reasoned, hearsay is admissible to establish consent to a warrantless search:
[W]e find that the hearsay evidence establishing Rizo’s consent was properly admitted at the suppression hearing, even though Rizo was unavailable for cross-examination. This Court has previously held that an affidavit for a search warrant may be based on hearsay information. State v. Wolff, 310 So.2d 729 (Fla.1975) (citing Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on other grounds, United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). See also Blair v. State, 406 So.2d 1103 (Fla.1981). In addition, we note that the United States Supreme Court in Jones found that “an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay....” 362 U.S. at 270 [80'S.Ct. 725]. We find no error in the admission of the hearsay evidence in this cause.
Lara, 464 So.2d at 1177; see also State v. Cortez, 705 So.2d 676 (Fla. 3d DCA 1998) (holding that hearsay is admissible in an evidentiary hearing on a motion to suppress evidence (citing Lara)).
The hearsay at issue in the instant case is different because it does not involve evidence supporting a search or probable cause. Rather, the evidence concerns whether Parker, after having invoked his right to counsel on May 5, initiated contact with law enforcement on May 7. We con- *860 elude that the hearsay at issue in this case, absent the stipulation, would not have been admissible.
We note that the failure to establish that Parker reinitiated contact with law enforcement on May 7 after having invoked his right to counsel on May 5 would not be a mere technical omission. Approaching Parker after he had asserted his right to counsel in the May 5 interview, absent Parker having been provided counsel or having initiated the May 7 contact, would be in violation of Parker’s constitutional right against self-incrimination and right to counsel. After an individual has clearly asserted his right to counsel, all interrogation is required to cease until he has been provided counsel. Edwards, 451 U.S. at 485, 101 S.Ct. 1880. As stated by the United States Supreme Court, “it is inconsistent with Miranda[8] and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.” Id. The requirement that the defendant must have reinitiated contact is to protect against the inherently compelling pressures of custodial interrogation. The United States Supreme Court has explained:
[T]he prophylactic protections that the Miranda warnings provide to counteract the “inherently compelling pressures” of custodial interrogation and to “permit a full opportunity to exercise the privilege against self-incrimination,” 384 U.S., at 467 [86 S.Ct. 1602], are implemented by the application of the Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities’ behest, and not at the suspect’s own instigation, is itself the product of the “inherently compelling pressures” and not the purely voluntary choice of the suspect.
Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
We conclude that trial counsel was deficient for stipulating to the admissibility of Detective Powers’ hearsay statements. In stipulating to the admissibility of these statements, counsel appears to have assumed that the trial court could not rely on hearsay to support a finding that Parker initiated the May 7 contact, even though the stipulation provided that the evidence “shall be admissible in evidence for purposes of [the] court’s determination of that motion.” Notably, no one argues that Parker’s counsel had a strategic reason for stipulating to the admissibility of Detective Powers’ hearsay statements. We conclude that stipulating to otherwise inadmissible evidence and waiving Parker’s ability to object to the same constituted deficient performance in this case, especially since the hearsay evidence was the only direct evidence regarding whether Parker initiated the May 7 interview. Because any analysis of prejudice must be done on a cumulative basis, we will discuss prejudice after our analysis of the remaining claims.
B. Impeaching and Cross-Examining Georgeann Williams
In this claim, Parker asserts that his trial counsel was ineffective for failing to competently cross-examine and impeach Williams as to her criminal history. After holding an evidentiary hearing on this claim, the postconviction court denied the claim, finding that Parker had failed to demonstrate deficient performance or prejudice. The postconviction court’s conclusion is supported by competent, substantial evidence.
*861 Parker contends that trial counsel was unprepared to confront Williams with records documenting her prior convictions. Parker asserts that counsel did not have those records ready to use at the resen-tencing proceeding because of an inadequate investigation. However, attorney Kevin Anderson testified at the evidentia-ry hearing that he found multiple certified copies of convictions in counsel’s files involving false statements or dishonesty, which were ready to be used for impeachment. Further, a review of the files introduced into evidence at the evidentiary hearing reveals that counsel had certified copies of many of Williams’s convictions. Although the files, as introduced into evidence, did not contain copies of some of the convictions Parker asserts should have been obtained, trial counsel testified at the hearing that two or three boxes of files were destroyed in a hurricane.
In addition to certified copies of convictions, the files revealed that trial counsel had hired an investigator to conduct a background investigation of Williams, which the investigator had conducted and provided to counsel. Counsel had copies of numerous arrest affidavits, traffic citations, and affidavits of violations of probation. He also had a copy of the Florida Department of Law Enforcement arrest report for Williams. In sum, the evidence demonstrates that counsel had prepared to cross-examine and impeach Williams and had performed an adequate investigation.
Parker next asserts that counsel was ineffective in cross-examining and impeaching Williams as to her criminal history. However, counsel questioned Williams at length on this subject. On direct, the State elicited that Williams had been convicted of petit theft “about four” times and had been convicted for driving with a suspended license. On cross-examination, trial counsel then questioned Williams concerning an arrest for a 1982 petit theft for which she was placed on probation. He also elicited that Williams had lied to the police and gave them her sister’s name in 1982 when she was arrested for driving with a suspended license. Further, at the time of the resentencing proceeding, she was on felony probation for driving while her license was suspended. The charge was a felony because she had been convicted of at least three offenses for driving with a suspended license. She was originally sentenced to thirty days in jail, but her sentence was reduced to probation. She was also arrested in 1999 for another felony offense of driving with a suspended license. Trial counsel also questioned Williams concerning letters she had written in 1996 stating that she did not know who was the shooter. During cross-examination, Williams stated that she had lied in the letters and had written the letters “just to be left alone.”
Parker asserts that trial counsel could have impeached Williams with other convictions and could have entered certified copies of convictions into evidence. However, this additional impeachment would be largely cumulative. The judge and jury already knew that Williams had been convicted of petit theft at least four times, that she was currently on probation for a felony conviction for driving with a suspended license, and that she apparently had an additional felony conviction for driving with a suspended license. “[Flailing to present cumulative impeachment evidence does not necessarily constitute ineffective assistance.” State v. Riechmann, 777 So.2d 342, 356 (Fla.2000). In sum, we conclude that counsel adequately prepared for impeaching Williams. Further, he impeached her at length concerning her criminal history and elicited from Williams that she had told lies, had lied to the police by giving them her sister’s name, and had *862 lied in letters in 1996. Trial counsel also introduced the 1996 letters into evidence, in which Williams wrote that she did not know who was the shooter. In light of this, we conclude that failing to introduce additional, cumulative evidence of her criminal history and failing to introduce certified criminal convictions into evidence did not constitute deficient performance.
C. Failing to Elicit Testimony from Richard Barlow that He Believed the Testimony of Michael Bryant
In this claim, Parker asserts that his trial counsel was ineffective for failing to question Richard Barlow on redirect as to his professional considerations in evaluating Michael Bryant’s credibility, after the State opened the door to such questioning on cross-examination. Although this claim was summarily denied by the postconviction court, Parker does not argue on appeal that he should have been granted an evidentiary hearing on this claim. Rather, he argues the merits of the claim. We conclude that this claim is without merit.
The facts underlying this claim are as follows. In 1998, this Court granted Parker a new penalty-phase proceeding because the State had withheld the exculpatory evidence of the testimony of Michael Bryant — testimony that was presented in codefendant Cave’s 1993 resentencing proceeding, in which Bryant testified that he overheard a conversation indicating that Cave was the shooter, not Parker. Parker V, 721 So.2d at 1149.[9] During Parker’s resentencing, Richard Barlow, the prosecutor during Cave’s 1993 resentencing proceeding, testified.
During direct examination, Barlow testified that he assessed Bryant’s credibility by evaluating whether Bryant would have any motives to come forward and testify and that he determined that Bryant did not have a motive to make money and that there was no potential intimidation by Cave. After speaking with Bryant, Barlow also considered codefendant Johnson’s statements. Trial counsel then asked Barlow how he had evaluated Johnson’s testimony and Bryant’s statements. The State objected on relevancy grounds, and the judge sustained the objection. Barlow further testified that he had also considered medical examiner evidence in assessing Bryant’s credibility. However, when counsel attempted to ask what Barlow’s considerations were as to the medical examiner evidence, the trial court precluded this line of questioning because it pertained to Barlow’s professional thought process in assessing Bryant’s credibility. Counsel then elicited from Barlow his opinion that Bryant’s testimony was credible and that during Cave’s trial, Barlow had taken the position that the State had proved beyond a reasonable doubt that Cave was the shooter.
On cross-examination, the State inquired as to Barlow’s thought processes in assessing Bryant’s credibility. In doing so, the State acknowledged that it had opened the door to Barlow’s thought processes in evaluating Bryant’s credibility. However, on redirect, trial counsel did not reopen the objected-to line of questioning about Bar *863 low’s mental processes in evaluating Bryant’s credibility with respect to the medical examiner evidence. Rather, counsel focused on the evidence brought out by the State on cross-examination, such as Bryant’s motives to testify against Cave.
On direct appeal, trial counsel argued to this Court that the trial court reversibly erred by precluding Barlow from testifying as to professional considerations in evaluating Bryant’s statement in conjunction with the medical examiner evidence. Parker VI, 873 So.2d at 283. This Court rejected that claim:
Lastly, Parker contends that the trial court erred by limiting the testimony of former assistant state attorney Richard Barlow, who presented the testimony of Michael Bryant during Cave’s 1993 penalty phase to establish that Cave was the shooter. Specifically, Parker argues that the trial court erred in precluding Barlow from testifying ... as to Barlow’s professional considerations in evaluating Bryant’s statement in conjunction with the medical examiner’s evidence ....
With respect to the exclusion of Barlow’s professional considerations in evaluating the credibility of Bryant’s statements, the trial court sustained the State’s objection to this line of questioning, ruling that the prosecutor’s “actual professional thought process” in evaluating a witness was not relevant. However, the trial court subsequently recognized during cross-examination that the State had opened the door to Barlow’s mental processes and that on redirect Parker would be allowed to question Barlow on this issue. It was Parker’s responsibility to reopen this line of questioning, which he failed to do. We therefore conclude that the trial court did not commit reversible error in sustaining the objection to testimony about the prosecutor’s evaluation of Bryant as a witness.

Id.

Parker now asserts that his counsel was ineffective for failing to reopen the objected-to line of questioning on redirect and points to this Court’s opinion on direct appeal in support of this claim.[10] We note that on redirect, trial counsel did not pursue the particular lines of questioning as to the medical examiner evidence or Johnson’s testimony. However, the record shows that on redirect, counsel did question Barlow regarding his reasons for believing Bryant’s testimony. Counsel asked whether Barlow had considered whether or not Bryant’s testimony was fabricated in order to escape Cave’s cell. Barlow testified that he had considered it, but that at the time of Cave’s 1993 resentencing proceeding, Bryant was not in jail and had no pending charges and, thus, in 1993 “it wasn’t a consideration that he wanted to be moved out of a cell to testify.” Barlow also testified that Bryant had no pending charges against him in 1993, nor did he have a civil case against the prison. On redirect, counsel appeared to focus on the evidence brought out by the State on cross-examination and elicited Barlow’s *864 reasons for believing that Bryant did not fabricate his testimony in order to escape from Cave’s abuse.
Thus, although trial counsel could have reopened the specific line of questioning concerning Barlow’s evaluation of the medical examiner evidence or Johnson’s testimony, the record shows that the failure to do so does not rise to the level of deficient performance. Further, although counsel could have pressed Barlow for his reasons why he believed Bryant in more detail, this also does not rise to the level of deficient performance. Parker has not demonstrated how failing to pursue a particular line of questioning or how failing to question Barlow for the reasons why he believed Bryant in further detail falls “outside the broad range of reasonably competent performance under prevailing professional standards.” Schoenwetter, 46 So.3d at 546 (quoting Maxwell, 490 So.2d at 932). Although trial counsel could arguably have elicited more of Barlow’s considerations in evaluating Bryant’s credibility, “[t]he standard is not how present counsel would have proceeded, in hindsight.” Brown v. State, 846 So.2d 1114, 1121 (Fla.2003) (quoting Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995)). Accordingly, we conclude counsel’s performance was not deficient as to this claim. Thus, the postcon-viction court did not err in denying this claim.

II. Claims Regarding the Cooperation Agreement with Codefendant Terry Johnson

We next review Parker’s claims concerning the cooperation agreement between Johnson and the State, the terms of which differed from the disclosure notice filed by the State and provided to counsel. Parker asserts that counsel was ineffective either because he had a copy of the agreement and failed to impeach Johnson with it or because he failed to obtain a copy of the agreement. Alternatively, Parker asserts that the State committed a Brady violation by not disclosing the complete terms of the agreement. Parker additionally asserts that the prosecutor’s statement during trial (that the gist of the disclosure notice and the agreement were the same) was a violation of Giglio.
The terms of the agreement were that Johnson agreed to “testify truthfully in accord with the sworn testimony that [he] gave to both law enforcement officers and the Grand Jury of Martin County in the year 1982” in exchange for the parole board being notified of his cooperation. However, the State’s disclosure notice that was provided to trial counsel reflected only that Johnson was to “truthfully testify” in exchange for the parole board being notified and made no mention that Johnson was to testify in accord with specific prior testimony.
During the cross-examination of Johnson at the resentencing proceeding, counsel introduced the State’s disclosure notice into evidence, which stated that Johnson had agreed to testify “truthfully.” Then the following took place:
DEFENSE COUNSEL: Mr. Johnson, is that the disclosure agreement that the State of Florida made to you that it would advise the Parole Commission of the fact that you did not testify, that it— if you did not testify it would make the Parole Commission aware of that fact? JOHNSON: I have never talked to Mr. Colton. [Mr. Colton was the State Attorney whose name was on the disclosure notice.]
STATE [MR. MIRMAN]: That’s not the document that he received, that’s a document I sent to you. The gist of it is the same. See what I mean? That’s the disclosure to the Defense, not to the witness.
*865 DEFENSE COUNSEL: So, my question — my question is, you were made aware by Mr. Mirman that if you testified before this Jury, that the Parole Commission would be made aware of that fact?
JOHNSON: That I — that I did cooperate by testifying truthfully.
As to Parker’s claim that his counsel was ineffective for failing to impeach Johnson with the complete terms of the agreement, this claim fails because Parker has not established that his counsel had a copy of the agreement or was notified of the complete terms of the agreement as of the time of Parker’s resentencing. All of the evidence suggests that counsel did not in fact have a copy of the agreement, nor was he otherwise notified of its complete terms, as of the time of the resentencing proceeding and, as discussed later, we conclude that the terms were improperly withheld by the State. Trial counsel cannot be ineffective for failing to impeach Johnson with the terms of a document that was withheld from him. Riechmann, 777 So.2d at 357; see also Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990) (“Counsel cannot be considered deficient in performance for failing to present evidence which allegedly has been improperly withheld by the State.”).
Parker also asserts that even if his counsel did not have a copy of the agreement, he was ineffective for failing to investigate the matter of the disclosure notice in order to obtain a copy of the agreement. However, nothing in the disclosure notice suggested that the terms of the agreement might differ or that a copy of the agreement should have been attached. We conclude that in this case, counsel was not deficient in failing to obtain from the State a copy of the agreement when the disclosure notice appeared to have disclosed all of the terms of the agreement.
We now consider Parker’s Gig-lio claim. To establish a Giglio violation, it must be shown that “(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material.” ' Guzman v. State, 868 So.2d 498, 5.05 (Fla.2003). “[T]he false evidence is material ‘if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.’” Id. at 506. “The State, as the beneficiary of the Giglio violation, bears the burden to prove that the presentation of false testimony at trial was harmless beyond a reasonable doubt.” Id. Giglio claims present mixed questions of law and fact. Accordingly, this Court defers to those factual findings supported by competent, substantial evidence, but reviews de novo the application of the law to the facts. Green v. State, 975 So.2d 1090, 1106 (Fla. 2008).
We reject Parker’s summarily presented claim that the prosecutor’s statement during resentencing — that the gist of the notice and the agreement were the same — was “tantamount to a Brady violation,” as well as a violation of Giglio. This claim was not presented to the post-conviction court. Thus, it is procedurally barred. See id. at 1104 (holding that claim “is procedurally barred because it was neither raised in Green’s 3.851 motion nor addressed by the trial court”).
We now consider Parker’s Brady claim. To meet the requirements of Brady, Parker must show that (1) favorable evidence — either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 *866 L.Ed.2d 286 (1999); see also Way v. State, 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, the defendant must demonstrate “a reasonable probability that the jury verdict would have been different had the suppressed information been used at trial.” Smith v. State, 931 So.2d 790, 796 (Fla.2006) (citing Strickler, 527 U.S. at 289, 296, 119 S.Ct. 1936). A reasonable probability is a probability sufficient to undermine confidence in the outcome. See Way, 760 So.2d at 913; see also Strickler, 527 U.S. at 290, 119 S.Ct. 1936.
In reviewing a Brady claim, “this Court defers to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but reviews de novo the application of those facts to the law.” Lightboume v. State, 841 So.2d 431, 437 (Fla. 2003). However, the postconviction court in this case did not make factual findings on the merits of this claim. Instead the postconviction court found that this claim was procedurally barred because it found that Parker could have raised it on direct appeal. We disagree.
Turning to the merits of Parker’s Brady claim that the State suppressed favorable information by failing to disclose the complete terms of the agreement, we conclude that the first prong of Brady is satisfied in this case because the complete terms of the cooperation agreement constituted favorable impeaching evidence. Trial counsel could have used the complete terms of the cooperation agreement — that Johnson was required to testify in accordance with his 1982 grand jury testimony and statements made to the police — to impeach Johnson as to the reasons he was testifying consistent with these prior statements at resentencing and disavowing a 1989 affidavit.[11] Instead, counsel was only able to impeach Johnson as to the fact that he had agreed to testify truthfully in exchange for the parole board being notified of his cooperation. The complete terms of the cooperation agreement should have been disclosed to defense counsel.
The second prong of Brady is also satisfied — the complete terms of the cooperation agreement were willfully or inadvertently suppressed by the State. The complete terms of the agreement were in the prosecutor’s possession; the agreement was between the State and Johnson, and Johnson testified at resentencing that the prosecutor had provided him with a copy of the agreement as well as his grand jury testimony to ensure that he remembered it. The State filed a Disclosure of Witness Agreement with the trial court and provided a copy of the disclosure to Parker’s trial counsel. However, rather than disclosing the complete terms of the agreement, the disclosure only specified that Johnson had agreed to “truthfully testify.” Thus, by not including the full terms of the agreement in the disclosure, the State withheld favorable impeaching evidence. Further, the prosecutor’s comment during trial counsel’s cross-examination of Johnson strongly suggests that only the disclosure notice was provided to trial counsel, not a copy of the cooperation agreement or notice of the complete terms of that agreement. Additionally, the only indication at the ev-identiary hearing that counsel had been notified of the complete terms of the agreement was a letter found in counsel’s *867 files that was dated about a year after Parker’s resentencing proceeding.
In evaluating the third prong of Brady — whether Parker was prejudiced by the failure to disclose the complete terms of the agreement — we address this on a cumulative basis along with the ineffective assistance of counsel claim regarding Parker’s May 7 statement. See Hurst v. State, 18 So.3d 975, 1015 (Fla.2009) (stating that this Court “considers the cumulative effect of evidentiary errors and ineffective assistance claims together” (quoting Suggs v. State, 923 So.2d 419, 441 (Fla.2005))); see also State v. Gunsby, 670 So.2d 920, 924 (Fla.1996) (granting a new trial on the basis of the combined effect of newly discovered evidence, the erroneous withholding of evidence, and ineffective assistance of counsel); cf. Mordenti v. State, 894 So.2d 161, 174 (Fla.2004) (reversing for a new trial after conducting cumulative prejudice analysis of withheld favorable information implicating Brady and asserted misrepresentations involving Giglio).

III. Cumulative Prejudice Analysis

Because we conclude that trial counsel was deficient concerning the May 7 statement and that the State improperly withheld favorable impeaching information (the complete terms of the cooperation agreement), we consider the impact of these errors cumulatively to determine whether Parker has established prejudice. After a thorough analysis of the claims, we conclude that Parker is not entitled to relief.
First, we determine the effect of counsel’s deficiency in stipulating to the admissibility of the hearsay statements made by Detective Powers in the stipulated record. Without these statements, the stipulated record does not contain evidence that Parker initiated the May 7 contact. Although the stipulated record contains an abundance of evidence indicating that Parker was generally eager to speak to police and very willing to cooperate with Powers on May 7, the record is devoid of any indication that Parker initiated the contact. Further, there is evidence that Parker refused to take police to find the knife between the May 5 and May 7 interviews, but no evidence in the stipulated record as to whether or why Parker would have changed his mind and initiated contact with police on May 7.
Although the record reflected that Parker was “totally cooperative” during the May 7 interview and signed a waiver of rights form indicating that he wished to show Detective Powers where the knife was located, this does not address the issue of who initiated the interview. See Hunter v. State, 973 So.2d 1174, 1176 (Fla. 1st DCA 2007) (“In this case, the State never rebutted Appellant’s testimony that he decided to speak to Officer Orr after being contacted by a correctional officer. Moreover, Officer Orr merely testified that he confirmed that it was Appellant’s decision to speak to him. This testimony does not address the issue of who initiated the contact that led Appellant to decide to speak to the officer. Thus, the trial court erred in denying Appellant’s motion to suppress.”). We conclude that there would not have been competent, substantial evidence to support the trial court’s finding that Parker initiated the May 7 interview, absent the stipulated-to hearsay statements.
Next, we evaluate the nature and impact of Parker’s May 7 statement as admitted at resentencing. Parker’s May 7 statement was relayed by Detective Powers’ relatively brief testimony at trial. Detective Powers testified that Parker accompanied him on a tour of the crime scene, starting at the convenience store. Parker showed Detective Powers where the victim *868 was “let ... out” of the car. He stated that Bush had both stabbed and shot the victim, and Parker showed Detective Powers where the knife used to stab the victim was discarded. Parker told Powers that they were pulled over by a deputy and discussed killing the deputy, but decided against it because the deputy had already run their license plate. Parker also showed Powers the route that the four codefendants took until they divided up the money from the robbery and disbanded.
In short, the content of Parker’s May 7 statement that would have been suppressed included Parker’s admissions that he was involved in the robbery and that he was at the scene of the murder. Parker’s May 7 statement largely corroborated Johnson’s testimony at the resentencing proceeding. Johnson testified in a similar manner, except that according to Johnson, moments before the victim was shot, Parker was handed the gun. Thus, Detective Powers’ testimony about Parker’s May 7 statement lent credibility to Johnson’s testimony because Parker himself admitted to being involved in the robbery and being at the scene of the murder — details testified to by Johnson. Further, if the May 7 statement had been suppressed, the jury would not have heard that the codefen-dants discussed killing a deputy after the murder.
However, even without Detective Power’s testimony as to Parker’s May 7 statement, Johnson’s detailed testimony concerning Parker’s actions during the crime remains, along with Georgeann Williams’ testimony that Parker admitted to being the shooter. Further, in his May 7 statement, Parker denied killing the victim, whereas Johnson’s testimony places the gun in Parker’s hand shortly before the victim was shot. Although without the admission of the May 7 statement, the jury would not have heard Parker’s admissions that he was at the scene of the crime and would not have heard that the participants had discussed killing the deputy, there would remain significant evidence of Parker’s role in the murder and sufficient evidence supporting the aggravators. On the other hand, the suppression of Parker’s May 7 statement removes the evidence supporting the trial court’s finding of the nonstatutory mitigator that Parker cooperated with police, which was given moderate weight.
We now discuss the value and effect of the additional impeachment concerning Johnson. “[T]he impeachment value of the undisclosed evidence must be analyzed in determining whether prejudice ensued.” Hunter v. State, 29 So.3d 256, 271 (Fla. 2008). Although the full terms of the cooperation agreement would have constituted stronger impeachment material than the terms revealed in the disclosure notice, we conclude that this additional impeachment would not have destroyed Johnson’s credibility. The judge and jury were already aware of the fact that Johnson had an agreement with the State to testify in exchange for the parole board being notified of his cooperation and presumably weighed his credibility accordingly. Thus, they were already aware of an agreement and Johnson’s motive to please the State and to testify in exchange for compensation. Further, the complete terms of the cooperation agreement required Johnson to “testify truthfully in accord with the sworn testimony that [he] gave to both law enforcement officers and the Grand Jury of Martin County in the year 1982.” (Emphasis added.) In short, even though the complete terms of the cooperation agreement would have given the judge and jury additional impeachment material on which to conclude that Johnson had a motive to testify, the cooperation agreement does not reveal any deal was made with Johnson other than that he should testify truth *869 fully based on his prior sworn testimony. Thus, we conclude that the impeachment value of the undisclosed evidence was not significant.
Parker asserts that if trial counsel had adequately impeached Georgeann Williams (with her prior convictions) and impeached Johnson (with the complete terms of the cooperation agreement), this would have shown that both Williams and Johnson were “utterly unworthy of belief’ and would have left but one piece of incriminating evidence suggesting that Parker was anything more than a passenger in the vehicle used to kidnap the victim — Parker’s May 7 statement, which would have been suppressed. However, we have concluded that counsel was not deficient in impeaching Williams. Further, as discussed above, had counsel been able to impeach Johnson with the complete terms of the cooperation agreement, the impact of this impeachment evidence would not have destroyed Johnson’s credibility as Parker assumes.
Parker also contends that -without Parker’s May 7 statement and with codefen-dant Johnson’s motive to lie exposed, there would have been insufficient remaining evidence to meet the heightened mens rea requirement for the imposition of the death penalty, citing Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). The holdings of the United States Supreme Court in Enmund and Tison were summarized by this Court in Stephens v. State, 787 So.2d 747, 759 (Fla. 2001):
The United States Supreme Court and this Court have consistently held that a sentence of death must be proportional to the defendant’s culpability. Thus, in Enmund the Court indicated that in the felony murder context a sentence of death was not permissible if the defendant only aids and abets a felony during the course of which a murder is committed by another and defendant himself did not kill, attempt to kill, or intend that a killing take place or that lethal force be used. Later, in Tison the Court said a sentence of death in the felony murder context can be proportional if the defendant is a major participant in the felony and the defendant’s state of mind amounts to a reckless indifference to human life.
Even without Parker’s May 7 statement and with the additional impeachment of Johnson, significant evidence remains that Parker was guilty of more than just felony murder. Even if Parker was not the shooter, he was “a major participant in the felony and [his] state of mind amounted] to a reckless indifference to human life.” Id. Johnson testified that Parker went in the store and participated in robbing and kidnapping the victim. Johnson also testified that shortly before the victim was killed, Parker asked Cave for the gun and exited the vehicle. Johnson then heard a shot, but did not see who shot the victim. In sum, the remaining evidence meets the requirements of Enmund and Tison.
We conclude that the cumulative effect of the May 7 statement and the withheld terms of the cooperation agreement does not undermine our confidence in Parker’s sentence of death “when viewed in the context of the penalty phase evidence and the mitigators and aggravators found by the trial court.” Stewart v. State, 37 So.3d 243, 253 (Fla.2010) (quoting Hurst v. State, 18 So.3d 975, 1013 (Fla.2009)). Accordingly, we conclude that Parker has not demonstrated prejudice and is not entitled to relief.

IV. Whether the Postconviction Court Erred in Precluding Certain Expert Attorney Testimony

In his final claim, Parker asserts that the postconviction court erred in limiting *870 Parker’s attempt to present expert testimony of an attorney, Anderson, who would have testified concerning trial counsel’s performance. Parker contends that the postconviction court erred because it was bound by an earlier 1989 decision of this Court and because the postconviction court misapplied Casey v. State, 969 So.2d 1055 (Fla. 4th DCA 2007). We conclude that Parker’s first claim is without merit and that any error in applying Casey was harmless.[12]
A trial judge’s decision to exclude expert testimony is reviewed for abuse of discretion. Lynch v. State, 2 So.3d 47, 80 (Fla.2008) (“The decision of a postconviction court to exclude the testimony of an expert is reviewed for abuse of discretion.”). This standard is satisfied when “the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.” Id. (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)).
At the outset, Parker asserts that this issue was already put to rest in a prior proceeding in this case. In Parker II, 542 So.2d at 357, this Court stated: “[W]e find no merit in Parker’s fourth claim that the trial court improperly admitted expert testimony concerning the effectiveness of his trial counsel.” The Court did not elaborate further.
We conclude that this Court’s holding in the 1989 case was not applicable here. This Court did not address whether expert testimony as to attorney effectiveness would always be appropriate or admissible on Strickland issues, nor did it discuss its reasons for its holding. Rather, this Court simply held that the trial court did not err in admitting expert testimony concerning trial counsel effectiveness in that specific circumstance. The ruling at issue here involved a different witness and different evidence.
Parker further contends that the postconviction court misapplied Casey, which involved an evidentiary hearing on ineffective assistance of counsel claims. In Casey, during the hearing, the postconviction court precluded expert testimony as to the reasonableness of the defense counsel’s strategic decisions. Casey, 969 So.2d at 1059-60. The Fourth District held that the postconviction court did not abuse its discretion in precluding the testimony, noting that the reasonableness of an attorney’s strategic decision is a matter of law to be determined by the judge and thus the judge could exclude the testimony as irrelevant or infringing on the province of the court. Id.
The postconviction court in this case, on the basis of Casey, ruled that Anderson could not testify as to whether trial counsel rendered ineffective assistance and could not comment on the reasonableness of any strategic decisions. We deny this claim because even assuming that the post-conviction court in this case did misapply Casey with respect to this ruling and thus arguably abused its discretion, any error is harmless beyond a reasonable doubt. Anderson testified as to whether trial counsel’s investigation was reasonable as to a number of claims on which an eviden-tiary hearing was granted. He also testified to other aspects of Parker’s ineffectiveness claims, such as his opinion that trial counsel was unsuccessful in impeaching Williams. The postconviction court *871 also had before it the direct appeal record as well as the evidence submitted by Parker during the evidentiary hearing. Anderson’s testimony would not have altered this record or evidence upon which the court relied. We conclude that failing to hear Anderson’s opinion on whether counsel was ineffective did not contribute to the postconviction court’s denial of Parker’s ineffective assistance of counsel claims on which an evidentiary hearing was granted. Accordingly, we hold that any error was harmless beyond a reasonable doubt.
CONCLUSION
For the foregoing reasons, we affirm the postconviction court’s denial of Parker’s motion for postconviction relief.
It is so ordered.
PARIENTE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., specially concurs, with an opinion.
CANADY, C.J. and POLSTON, J., concur in result.
QUINCE, J., concurs in part and dissents in part with an opinion.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. The trial court found: (1) the capital felony was committed while the defendant was engaged in the commission of a kidnapping; (2) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; (3) the capital felony was committed for pecuniary gain; (4) the crime was especially heinous, atrocious, or cruel (HAC); and (5) the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).

. The trial court found the following nonstat-utory mitigators: (1) the defendant cooperated with law enforcement (moderate weight); (2) the defendant had an abused or deprived childhood, experienced childhood hunger, was raised in poverty, was raised without a father figure, and was left unsupervised at home (little weight); (3) the defendant is psychologically classified as a follower (very little weight); (4) the defendant’s behavior in prison has been good for the most part (very little weight); (5) the defendant does well in a structured environment such as prison (very little weight); (6) the defendant exhibited appropriate behavior during his trials (very little weight); (7) the defendant developed a relationship with Audrey Rivers, a woman who visited him somewhat regularly (very little weight); (8) the defendant was under the influence of alcohol on the night of the crime (very little weight); (9) the defendant performed well as a public school athlete (little weight); (10) the defendant is a slow learner and was teased as a child (little weight); (11) the defendant left school to help his family, was not a violent or cruel child, was a kind and helpful child, and protected his family (moderate weight); (12) the defendant treated his teachers with respect and was not an aggressive child (little weight); and (13) the lapse of time between the defendant’s first trial and the current penalty phase was caused by the State’s discovery violation (very little weight).

.Parker raised the following claims: (1) the trial court erred in denying the motion to suppress his May 7, 1982, statement; (2) the trial court erroneously excluded certain defense evidence; (3) the trial court erred in failing to grant a motion for mistrial based on the prosecutor’s improper comment during closing argument; (4) the trial court’s misstatement to the venire panel denied Parker the right to a fair trial; (5) the trial court erred in finding HAC; (6) the trial court erred in finding CCP; (7) the trial court erred in finding the avoid arrest aggravator; (8) the trial court erred in finding the pecuniary gain aggravator; (9) the trial court failed to assign the proper weight to the mitigating factors established, and Parker’s death sentence was disproportionate; (10) the murder in the course of a felony aggravator was unconstitutional; (11) the trial court erred in allowing the State to rehabilitate a witness with statements of an unidentified person; (12) the State's use of inconsistent “triggerman” theories was a violation of Parker’s due process rights; (13) the trial judge lacked the authority to preside over the penalty-phase proceeding; (14) Florida’s death penalty statute was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (15) the delay between Parker’s indictment and the new penalty phase violated the Eighth Amendment; and (16) the trial court erred in denying Parker’s request for a special jury instruction on circumstantial evidence. Parker VI, 873 So.2d at 277 n. 4.

. An evidentiary hearing was held on the following claims: (1) trial counsel was ineffective for (a) failing to procure Bryant as a witness; (b) failing to prepare to cross-examine and impeach Johnson; (c) failing to properly investigate and procure mitigation witnesses, attack Parker's prior convictions, and retain a mental health expert; (d) failing to move for a continuance to produce Bryant; (e) failing to prevent the introduction into the resentencing trial the information that Parker had been sentenced to death and had spent time on death row; (f) failing to properly impeach Williams; (g) failing to object to Parker being shackled during trial; (h) improperly waiving Parker’s right to testify; and (2) the State violated Brady by failing to disclose the terms of Johnson’s witness agreement and violated Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), by allowing Johnson to falsely deny his signature on his "recantation” affidavit.
The following claims were summarily denied without an evidentiary hearing: (1) trial counsel was ineffective for (a) improperly stipulating to the use of inadmissible evidence at the hearing on the motion to suppress Parker's May 7, 1982, statement, and failing to argue that this second statement to the police was involuntary; (b) failing to preserve Parker's speedy trial rights; (c) failing to depose and investigate the State’s expert witness; (d) failing to apply and argue the applicable law concerning the admission of mitigation witness affidavits; (e) failing to question Richard Barlow, the former prosecutor on Cave's case, on redirect regarding Barlow’s professional considerations in evaluating Bryant’s statements; (f) failing to properly prepare for cross-examination and impeachment of Art Jackson, a Martin County Jail officer, concerning the cell locations of the codefendants; (g) failing to preserve Parker’s speedy trial rights for appeal; (h) failing to preserve for appeal the issue of the sentencing order being adopted completely from the State’s sentencing memorandum; (i) failing to determine whether Parker is mentally retarded; (j) failing to argue that Parker’s May 7, 1982, confession was coerced; (2) Parker’s death sentence is unconstitutional; and (3) the trial court and prosecutor misled the jury by minimizing the jury’s rolé in sentencing.

. Sheriff Holt is now deceased.

. Although the postconviction court summarily denied this claim, Parker does not argue on appeal that the postconviction court should have granted an evidentiary hearing. Rather, Parker focuses on the merits of the claim.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Cave’s initial sentence of death was vacated by the federal district court because of ineffective assistance of counsel, and Cave was granted a new sentencing proceeding. Cave v. Singletary, 971 F.2d 1513, 1514 (11th Cir. 1992). After a second sentencing proceeding in 1993, he was again sentenced to death. — it was during that proceeding that the State presented testimony that Cave was the shooter. That death sentence was vacated in 1995 due to a procedural error. Cave, 727 So.2d at 228. Cave was given a third resentencing proceeding, during which the State did not argue that Cave was the triggerman, but rather that Cave had a leadership role during the entire criminal episode. Id. at 230-31.

. Parker appears to frame the issue in his postconviction motion more broadly than the issue addressed by this Court in its direct appeal opinion. Parker contends that trial counsel was ineffective in failing to elicit testimony on redirect examination regarding Barlow’s professional considerations in reviewing Bryant’s credibility. However, a review of this Court’s opinion on direct appeal reveals that the Court’s statements about failing to reopen the line of questioning pertained to Barlow's considerations in evaluating Bryant’s testimony in conjunction with the medical examiner's evidence. See Parker VI, 873 So.2d at 283.

. The affidavit, which was purported to be signed by Johnson, stated, among other things, that Bush was the one who confessed to Williams, that Bush was a liar and a violent person, that Johnson did not remember how Bush “got the gun [from Cave], but [he] heard a holler, then [he] heard a shot,” and that Parker was not a violent person and was not capable of murder.

. Neither party argues that Casey was wrongly decided, and therefore we do not comment on the correctness of that decision.